Argued September 30, petitioners' ballot title adopted
November 6, 1963

# WESTERHOLM ET AL *v.* THORNTON ET AL

386 P. 2d 458

*Wendell Wyatt,* Astoria, argued the cause for petitioners. On the brief were Wyatt, Macdonald & Dean, Astoria.

*Walter L. Barrie,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

ROSSMAN, J.

This proceeding, which is authorized by ORS 254.080, is an appeal by William E. Westerholm, James H. Cellars and Columbia River Salmon & Tuna Packers Association from a ballot title written by the Attorney General (ORS 254.060) for an initiative measure which relates to (1) the catching of salmon and steelhead fish and (2) dealing in such fish that were caught unlawfully. The initiative measure reads in part:

"Section 2. (1) It shall be unlawful to take, catch or fish for any species of salmo gairdneri, hereinafter called steelhead, or any species of salmon at any time, except by hook and line, commonly known as angling, in the waters of any stream or river which empties in the Pacific Ocean or from the tributaries of such streams or rivers, whether within the waters over which the State of Oregon has sole or concurrent jurisdiction. Such waters shall include all bays, inlets, sloughs, lakes or tidal areas within the boundaries of the State of Oregon or over which the State of Oregon has jurisdiction. Angling shall be subject to the rules and regulations of the Oregon State Game Commission.

"(2) No commercial fishing licenses shall be issued to allow taking of any species of salmon or steelhead in the waters described in subsection (1) of this section.

"(3) It shall be unlawful for any individual, firm, association, copartnership, corporation or cooperative in this state, acting on his own account, or for the account of another, to buy, sell, ship, store, process or have in possession for purposes of trade or sale, salmon or steelhead taken from the waters described in subsection (1) of this section by means other than hook and line, commonly known as angling, whether landed in this state or any other state."

The ballot title written by the Attorney General follows:

"Purpose: Prohibits commercial fishing for salmon and steelhead in all Oregon inland waters, including boundary rivers. Prohibits all commercial dealings in fish taken illegally."

The opponents to the Attorney General's ballot title, to whom we will refer as the plaintiffs, submit the following as the proper ballot title:

"Purpose: Prohibits commercial fishing for salmon, steelhead in all Oregon inland waters, including boundary rivers. Prohibits all commercial dealings in such fish taken in prohibited areas."

The plaintiffs argue:

"* * * We are presently prohibited from engaging in commercial dealings in fish taken illegally. Although the text of the initiative assumes to prevent such commercial dealings, the act itself does not create any new prohibition under which we are not now presently laboring. To give the impression in the ballot title that this is a chief purpose of the act is grossly misleading.

"The prejudice lies in the fact that many voters might favor an act, a chief purpose of which was to outlaw dealings in fish taken illegally. The act is not that broad. The accurate description is to prohibit commercial dealings in fish taken in the newly prohibited areas. The act itself only adds the prohibition in commercial dealings to the newly outlawed areas."

The plaintiffs' brief states: "We are presently prohibited from engaging in commercial dealings in fish taken illegally." At that point the brief cites 12 sections of our laws which warrant its statement.

It will be noticed that the first sentence of the ballot title prepared by the attorney general and of the one prepared by the plaintiffs are the same with the unimportant exception that the plaintiffs omit the conjunctive "and" which appears between the words "salmon" and "steelhead" in the Attorney General's. The omission was apparently due to the plaintiffs' efforts to save a word.

The first five words of the second sentence of each of the proposed ballot titles are the same. After those five words only three remain in the Attorney General's ballot title. They are "fish taken illegally." In the plaintiffs' proposed ballot title only the following six words remain after the five to which we just referred: "such fish taken in prohibited areas." The difference, if any, in the connotation of the two terms "fish taken illegally" and "such fish taken in prohibited areas," is the sole subject of dispute in this case.

The words "fish taken illegally" found in the Attorney General's ballot title and "such fish taken in prohibited areas" refer to the same fish, that is, to fish taken illegally. The plaintiffs' group of words has the virtue of referring not only to fish taken

illegally but of designating explicitly fish taken in the areas proscribed by this measure. That feature is important.

The purpose of this measure is not only to prohibit commercial fishing in the expanded areas which this measure describes but also to render it unlawful for anyone to conduct commercial dealings in salmon and steelhead taken in violation of the measure.

The language of the plaintiffs' proposed ballot title minimizes the possibility that a reader of it will surmise that unless this measure is adopted Oregon will have no law that prohibits commercial dealings in salmon and steelhead that were taken illegally. Since the plaintiffs' proposed ballot title uses the words "fish taken in prohibited areas," a reader should realize that the commercial dealings which it prohibits pertain only to fish taken in prohibited areas and not to fish taken outside of those areas, as, for example, in the open ocean.

The difference in the meaning of the two groups of words above quoted, which constitute the difference between the plaintiffs' and the Attorney General's proposed ballot titles is not great; but it is probably sufficient to prevent some voters from inferring that (1) unless they approve this measure Oregon will have no legislation that prohibits commercial dealings in fish taken illegally and (2) the measure prohibits commercial dealings in Oregon in fish taken in areas outside of that described in this measure.

ORS 254.070 states:

"* * * In writing the ballot title the Attorney General shall, to the best of his ability, give a true and impartial statement of the purpose of the measure and in such language that the same shall

not be intentionally an argument or likely to create prejudice either for or against the measure."

ORS 254.080 provides for an appeal to this court from a ballot title written by the Attorney General and defines the court's duty in determining the appeal. The same section of our laws requires us to certify a ballot title to the Secretary of State if we believe that the one prepared by the Attorney General is not satisfactory and that we have found one that is more suitable.

■ If we believe that the ballot title written by the Attorney General may inadvertently induce some voters to draw an erroneous inference as to the measure's meaning or purpose and that a ballot title is available that does not have that unfortunate effect, it is clearly our duty to reject the Attorney General's ballot title and certify the one which we prefer. Nothing less than that should be our duty. The ballot title may constitute the only material which some voters read in their efforts to acquaint themselves with the measure. It may therefore be a writing of real importance, especially, if the outcome of the voting is close. In so expressing ourselves we cast no aspersions upon the high purposes of the Attorney General.

■ Since we believe that the ballot title proposed by the plaintiffs minimizes the possibility that a voter may draw erroneous inferences from the proposed measure, we adopt it and certify it to the Secretary of State as the title to be given to the measure.

LUSK, J., dissenting.

Having in mind the standard set by ORS 254.070 to which the attorney general must conform in writing a ballot title, and the limited scope of review of that

official's product by this court, *Richardson v. Neuner,* 183 Or 558, 564, 194 P2d 989, I think that the ballot title now under scrutiny is sufficient. We have never disapproved a ballot title simply because we thought that we could write a better one. Concededly, this ballot title is not intentionally unfair, but the court holds that it is, nevertheless, prejudicial, because it may mislead voters into believing that approval of the measure is desirable lest, otherwise, there would be no law of Oregon prohibiting commercial dealing in fish taken illegally. The objection seems to me to be hypercritical. I would certify the attorney general's ballot title.

I am authorized to say that Mr. Justice O'CONNELL concurs in this opinion.