*[407] SCHWAB, C. J.
The issue presented by this appeal is whether an initiative measure proposing an amendment to a county charter may be submitted to the voters at a special election when the county charter so provides.
On August 3, 1977, the Director of Multnomah County’s Division of Records and Elections certified to the Board of County Commissioners for Multnomah County (the Board) that initiative petitions had been filed with him which had a sufficient number of validated signatures to place a measure proposing amendments to the county charter on the ballot. The petitions specified that the election on the initiative measure was to be held on May 23, 1978, the date of the next statewide primary election. On August 9, 1977, in response to citizen requests, the Board ordered a special election on November 8, 1977, for submission of the initiative measure to the voters.[1]
Plaintiff brought an action for declaratory judgment seeking a declaration that any action taken by *[408] the defendant to conduct an election on the initiative proposing amendments to the county charter was unlawful and void and seeking an injunction restraining the defendants from conducting a special election on the initiative. The trial court granted plaintiffs motion for summary judgment and ordered that the defendants conduct the election on the initiative measure on May 23,1978, instead of on November 8,1977.
ORS 203.720 provides:
"The legal voters of any county, by majority vote of such voters voting thereon at any legally called election, may adopt, amend, revise or repeal a county charter. The charter, or legislation passed by the county pursuant thereto, shall provide a method whereby the legal voters of the county, by majority vote of such voters voting thereon at any legally called election, may amend, revise or repeal the charter. The county charter and legislative provisions relating to the amendment, revision or repeal of the charter are deemed to be matters of county concern and shall prevail over any conflicting provisions of ORS 203.710 to 203.790 and other state statutes unless otherwise specifically provided by conflicting state statutes first effective after January 1, 1961.”
ORS 203.710(3), effective August 9, 1961, provides:
"As used in ORS 203.710 to 203.790, unless the context requires otherwise, 'legally called election’ means any primary or general election held throughout the county.”
Plaintiff argues that ORS 203.720 and 203.710(3), read together, prohibit an initiative measure proposing an amendment to a county charter from being submitted to the voters at a special election. Defendant disagrees with that interpretation and also argues *[409] that the conduct of elections on initiative measures amending a county charter is governed not by ORS 203.720, but by ORS 203.780, which provides in pertinent part:
"(1) This section, pursuant to section 10, Article VT, Oregon Constitution, describes the manner by which the initiative and referendum powers reserved to the legal voters of every county relative to the adoption, amendment, revision or repeal of a county charter and to legislation passed by counties which have adopted such a charter may be exercised. For the purposes of this section 'county legislation’ means the adoption, amendment, revision or repeal of a county charter and legislation passed by counties which have adopted such a charter.
«(2) * * * ORS 254.030, 254.042, 254.060 to 254.100, 254.110 to 254.170 and 255.410 to 255.430 and 255.440 shall apply in every county in all matters concerning the operation of the initiative and referendum in its county legislation, on which the county has not made or does not make conflicting provisions.
"* * * * (Emphasis supplied.)
ORS 203.780, defendant contends, permits a county to conduct a special election on an initiative proposing amendments to its charter as long as the county has provided for such a procedure in its charter or ordinances.
ORS 203.720 and 203.780 were both enacted by the Oregon Legislative Assembly as part of chapter 527 of Oregon Laws 1959. The House Committee on Local Government, referring to ORS 203.720, stated:
"* * * The third sentence of [ORS 203.720] recognizes, in other words, that the legislature considers the amendment, revision or repeal of a charter (as distinguished from its adoption) to be a matter of county concern unless, after 1961, the legislature otherwise specifically provides.” House Committee on Local Government, "Explanation of House Bill No. 616,” § 2 (1959).
The House Committee characterized ORS 203.780 as
"* * * a description of the method by which, independent of any other method, the legal voters of a county *[410] may adopt a charter by the initiative method or, absent county legislation providing for the exercise of the initiative and referendum powers, may amend, revise or repeal a charter by initiative or referendum. * * *” (Emphasis supplied.) House Committee on Local Government, "Explanation of House Bill No. 616,” § 9 (1959).
 The legislative history of both ORS 203.720 and 203.780 and the plain language of both statutes indicate that the legislature intended that county charter and legislative provisions regarding the amendment of its charter should be given precedence over any conflicting state provisions. Hence, we cannot permit a state statutory provision to prevail unless we deduce a clear intent on the part of the legislature to specifically preempt a conflicting county provision. In this case, the fact that the legislature enacted ORS 203.710(3), defining "legally called election” as used in ORS 203.720, cannot be taken to mean that it intended to specifically prevent counties from amending their charters other than at primary or general elections. The definition contained in ORS 203.710(3) governs only in the absence of contrary county law. We need not reach defendant’s contention that ORS 203.780 exclusively governs the procedures to be followed in amending a charter by initiative measure.
Plaintiff next argues that the county could not amend its charter at a special election on an initiative measure because the Board does not have the power to order a special election. Plaintiff relies on Multnomah County Ordinance No. 57, § 5 A 1 d which states:
"A. Electors within Multnomah County shall submit petitions in the following manner:
"1. * * * The preliminary petition must state:
* * * if:
"d. The date of the election, which must be the next succeeding state-wide primary or general election, whichever is sooner.”
Plaintiff contends that this section of the ordinance prohibits the Board from conducting a special election. Defendant, on the other hand, contends that § 11 A of *[411] Ordinance No. 57 permits the Board to conduct a special election:
"A. The Board may, in response to receipt of certification of the Director that a qualified petition has been filed * * * call a special election at which time a measure would be submitted to a vote of the people.”
The Multnomah County Home Rule Charter, § 11.50, provides that it may be amended either at a regular or special election:
"(1) This charter may be amended or repealed by the voters of the comity at
"(a) a regular election or
"(b) a special election called by the board of county commissioners.
"(2) An initiative petition to submit a charter amendment or repeal to the voters shall be filed with the department of records and elections at least 90 days before the election at which the measure is to come before the voters.
* if: * * »
 The charter of a county bears the same general relation to its ordinances that the constitution of a state bears to its statutes. A county board of commissioners " 'cannot lawfully exceed its legislative authority defined and limited by the charter under which it acts.’ ” Robertson v. Portland, 77 Or 121, 128, 149 P 545 (1915). See Fisher et al v. City of Astoria, 126 Or 268, 280, 269 P 853 (1928); Beaverton v. I. A. Fire Fighters, 20 Or App 293, 300, 531 P2d 730 (1975). Thus, a county ordinance may not conflict with its county authorizing charter. 5 E. McQuillin, The Law of Municipal Corporations, § 15.19, at 79 (3d rev ed 1969).
Section 5 A 1 d of Ordinance No. 57 appears, on its face, to conflict with § 11.50 of the county charter authorizing special elections. In view of the supremacy of the charter provisions, we do not interpret § 5 A 1 d as prohibiting the Board from conducting a special election. Instead, we read § 5 A 1 d as fixing the latest *[412] date on which an election on the matter presented in the initiative petition may be conducted. This section, we believe, limits the maximum time which can elapse between the circulation of an initiative petition and the ultimate vote on the measure presented by the petition in order to prevent the subject matter of the initiative from becoming outdated. This interpretation is buttressed by the fact that preservation of the timeliness of issues presented by initiative petitions is a subject of another provision of Ordinance No. 57, namely § 9 B 2:
"No petition shall be accepted for filing unless the signatures thereon have been secured within six months of the date on which the first signature on the petition was affixed.”
Seufert et al. v. Stadelman et al., 178 Or 646, 167 P2d 936 (1946), does not compel a contrary conclusion. In Seufert\ the Supreme Court dealt with a situation where a city council wished to hold an election on an initiative petition after the date mentioned on the face of the petition. The court stated:
"In our judgment, it is not mandatory upon the council to call an election for the date mentioned in the petition, if, in its legislative discretion, another date is more suitable. If another date is selected, however, it should approximate the requested date as nearly as may be. * * * [I]t is to be observed that, if an election upon a proposed initiative measure could be held only upon the date mentioned in the petition, it would always be possible, by resort to delays and obstructive tactics, to defeat the right of the people to vote thereon. To permit such tactics would, of course, be contrary to the spirit and intent of the constitution. * * *” 178 Or at 656-57.
Seufert does not prevent us from holding that the board may select an election date before the date indicated in the initiative petition. The Supreme Court in Seufert was concerned about a city council’s attempt to delay an initiative election in order to postpone electoral consideration of issues presented. In this case, the Board action advancing the date of the election cannot be said to defeat the right of the county *[413] electorate to vote on the issues presented. While the people who signed the petitions in this case would have been more precisely informed if § 5 A 1 d of Ordinance No. 57 permitted, and the petitions had contained a statement, setting the date of May 23,1978 as the last date on which an election could be held, we cannot discern any prejudice flowing from its absence.
Finally, on cross-appeal plaintiff contends that even if the county could conduct a special election on the initiative measure, the proposed measure is unconstitutional in that it embraces more than one subject, a violation of Article IV, § 1 (2) (d), of the Oregon Constitution.[2] An initiative measure to be voted upon by the electorate is no different than a measure pending before the Legislative Assembly. Consequently,
"* * * [w]here all statutory requirements have been complied with [for placing an initiative measure on the ballot], * * * the people alone are authorized to determine whether the proposed measure shall be enacted into law and if the measure when enacted is unconstitutional, then only have the courts power to declare it to be unconstitutional. * * *” State ex rel. Carson v. Kozer, 126 Or 641, 647, 270 P 513 (1928).
We thus cannot reach the constitutionality of the initiative measure at this time. See Oregon AFL-CIO v. Weldon, 256 Or 307, 312, 473 P2d 664 (1970); Johnson v. City of Astoria et al, 227 Or 585, 591, 363 P2d 571 (1961).
We find no legal impediment to holding the election on November 8, 1977.
Reversed.

The Multnomah County Board of Commissioners’ order reads in pertinent part:
"WHEREAS, the Board of County Commissioners of Multnomah County, Oregon, has received certification from the Director of the Division of Records and Elections of the Department of Administrative Services that a qualified petition proposing an amendment to the Multnomah County Home Rule Charter has been filed; and
"WHEREAS, the Board has been requested by electors of Multnomah County at a regular meeting held by the Board on August 2, 1977, to submit the Home Rule Charter Amendment proposed by initiative petition to the legal voters of Multnomah County at a Special Election to be held on the earliest lawful date pursuant to Ordinance No. 57, § 11; and
"WHEREAS, the 8th day of November, 1977, is the same day upon which a statewide election will be held and is the earliest date on which an election can be held in compliance with applicable laws; and
"WHEREAS, the Board finds that calling a Special Election on November 8, 1977, concurrently with the statewide election, will enable Multnomah County to share the costs of the election with the state, resulting in a substantial saving of money to the county, and
"WHEREAS, the Board finds that calling a Special Election at the earliest possible date is in the public interest because it will result in *[408] the early determination of the structure of county government for the 1978 elections and, if the measure is passed, will allow more time for the work of the Charter Review Committee; now, therefore, it is
"ORDERED:
"1. An election is hereby called to be held concurrently with the statewide election on November 8, 1977 * *

 Oregon Constitution, Art IV, § 1 (2) (d), provides:
"* * * A proposed law or amendment to the Constitution shall embrace one subject only and matters properly connected therewith.”