MONTGOMERY COUNTY, MARYLAND ET AL. V.
BOARD OF SUPERVISORS OF ELECTIONS FOR
MONTGOMERY COUNTY ET AL.

[No. 1160, September Term, 1982.]

*Per Curiam Order filed October 1, 1982.*
*Opinion filed November 9, 1982.*

The cause was argued before GILBERT, C. J., and MORTON and ADKINS, JJ.

*Nathan J. Greenbaum, Assistant County Attorney for Montgomery County,* for appellants.

*John F. Duiguid* and *Arthur B. Spitzer* for appellees.

GILBERT, C. J., delivered the opinion of the Court.

## PER CURIAM ORDER

This matter coming on for hearing and argument having been heard, it is by the Court of Special Appeals, this 1st day of October, 1982,

ORDERED; that for the reasons to be explained in an opinion to be hereinafter filed, the Order of the Circuit Court for Montgomery County denying the appellants' Motion for a Writ of Mandamus and for a declaratory judgment, is reversed. Costs to be paid by appellees.

On October 1, 1982, this Court, after oral argument before it in the matter of Montgomery County, Maryland *et al.*[1] (County) v. Board of Supervisors of Elections for Montgomery County (Board), issued its *per curiam* order reversing the order of the Circuit Court for Montgomery County. We shall now explain why we did reverse the trial court.

The County has no wholesale outlets for the sale of alcoholic beverages except through dispensaries owned and operated by the County itself, nor does it permit package goods sales of hard liquors except through the County dispensaries. For reasons not apparent in the record, a petition was circulated in the County and subscribed by in excess of 10,000 voters of that County. The object of the petition was to place on the ballot a proposed charter amendment that

---

[1]. Charles Robert Dalrymple was also a party plaintiff in the trial court and an appellant here. For purposes of simplicity, we use the noun "County" to refer to Montgomery County and Mr. Dalrymple.

would enjoin the County from selling or dispensing "alcoholic beverages after April 5, 1983."

The County Executive, as he was required to do by § 16-13 of the Montgomery County Code, transmitted the petition to the Board. The Board, after examination, certified that the petition contained the requisite number of signatures, and that the statutory requirements for placing the matter on the ballot had been met.

The County filed a "Bill of Complaint for Declaratory Judgment, Writ of Mandamus and Other Relief," against the Board. Robin K.A. Ficker, Esq., moved to intervene in the proceeding as a party defendant. Mr. Ficker represented that he was the "person responsible for collecting in excess of 10,000 signatures" that sought to have on the ballot the question of the adoption of a "new section 317" of the County Charter. Although Mr. Ficker did participate in the hearing before the circuit court, his motion to intervene was not subscribed by the trial court, as required by Md. Rule 208.

After the hearing, the judge denied the County's bill, thus permitting the matter of the adoption, *vel non,* of proposed § 317 to go on the ballot. The County appealed to this Court.

The issues presented to us may be reduced to the single question:

> May the voters of a particular county, by amending the county charter, effectively repeal or render nugatory, an act of the General Assembly of Maryland?

Through Laws 1951, Ch. 566, the General Assembly of Maryland declared the policy of this State with respect to the regulation and control of alcoholic beverages to be that

> "it is necessary to regulate and control the manufacture, sale, distribution, transportation and storage of alcoholic beverages within this State and the transportation and distribution of alcoholic beverages into and out of this State to obtain respect and obedience to law and to foster and promote temperance. *It is hereby declared to be the leg-*

*islative intent that such policy will be carried out in the best public interest by empowering the Comptroller of the Treasury, the State Appeal Board, the various local boards of license commissioners and liquor control boards, all enforcement officers and the judges and clerks of the various courts of this State with sufficient authority to administer and enforce the provisions of this article.* The restrictions, regulations, provisions and penalties contained in this article are for the protection, health, welfare and safety of the people of this State. It shall also be the policy of the State to tax alcoholic beverages as provided in this article, and to deny to any political subdivision in this State the power or authority, either by public general law or by public local law, to impose any tax on distilled spirits, beer, wine and all other alcoholic beverages on and after July 1, 1955." (Emphasis supplied.)

We think it clear that the act makes manifest that the State, and the State alone, shall regulate and control, within Maryland, the sale, manufacture, distribution, storage, or transportation of alcoholic beverages.[2]

In the exercise of its powers, the Legislature, by Md. Ann. Code art. 2B, §§ 161(a) and 165(e), has conferred upon the County the right to "establish and maintain stores to be known as 'county liquor dispensaries,' for the sale of any sparkling or fortified wine and any other alcoholic beverages containing more than 14 percent of alcohol by volume, in sealed packages or containers." § 161(a). The moneys derived from the sale of alcoholic beverages "must be deposited in a bank or banks located within Montgomery County and may be disbursed only in accordance with the statute." § 165(e).

The County possesses the power to lease, purchase, or otherwise acquire real or personal property necessary to the sale of the alcoholic beverages. § 163(k).

---

**2.** *But see* Md. Ann. Code art. 2B, § 206(a), which states:
"The Talbot County Commissioners shall regulate the retail sale of alcoholic beverages within Talbot County."

The appellees seem to argue that the proposed amendment does not violate the State statute because the statute merely confers upon the County the right to sell alcoholic beverages, it does not command that the County do so.

Irrespective of the semantics involved, we think it transpicuous that the Legislature has preempted the field of the regulation and control of alcoholic beverages. *See generally* Md. Ann. Code art. 2B, § 1.

Accepting that premise as true, we now turn to the question of whether the voters of a particular county may undo that which the Legislature has done insofar as the sale of alcoholic beverages is concerned.

The answer to this question is found in a trilogy of cases decided by the Court of Appeals, namely: *Montgomery County Board of Realtors, Inc. v. Montgomery County,* 287 Md. 101, 110, 411 A.2d 97, 102 (1980), *McCarthy v. Board of Education of Anne Arundel County,* 280 Md. 634, 374 A.2d 1135 (1977), and *County Council v. Montgomery Ass'n,* 274 Md. 52, 333 A.2d 596 (1975).

Judge Smith, writing for the Court in the *Board of Realtors,* said, "A county may not enter a field which the State has occupied and preempted. . . ."

It follows that if county government may not enter into a field preempted or occupied by the State, the voters of a county may not confer upon themselves the right to do what the county government may not do.

In the instant case, the State statute grants the County a monopoly for the purpose of selling alcoholic beverages. Since that authority was bestowed by State action, it is the State, not the county government or voters of that county, that may remove it.

There is a line of cases from other jurisdictions that hold that issues such as this should be put before the voters before they are addressed by the courts.[3] Apparently, it is reasoned

---

3. *See* Bardwell v. Parish Council, 216 La. 537, 44 So.2d 107 (1949); Union v. Conlon, 19 A.D.2d 848, 243 N.Y.S. 2d 484 (1963); State ex rel Cincinnati Gas & Electric Co. v. Leonard, 138 Ohio St. 497, 37 N.E.2d 41 (1941); Unlimited Progress v. Portland, 213 Or. 193, 324 P.2d 239 (1958); West v. Carr, 212 Tenn. 367, 370 S.W.2d 469 (1963).

that if the voters reject the proposition there is nothing for the court to decide inasmuch as the matter is mooted.[4] We find the reasoning of those cases to lack persuasion in the light of the clear law of this State.

To allow voters of Montgomery County to pass on the question presented by the petition in this case would have been a waste of time, money, and effort. In the light of the fact that the adoption of the petition would be patently contrary to the law of this State, the trial judge should have declared the petition illegal and issued the writ of mandamus commanding the Board to delete the matter from the ballot. The judge's disinclination to so rule is error and for that reason we reversed his order.

---

4. The appellees cite two Maryland cases for this proposition, neither of which is persuasive. In fact, Schneider v. Lansdale, 191 Md. 317, 61 A.2d 671 (1948) cuts against appellee's position. There, the Court stated that although there are many authorities which support the view that courts should not interfere with a "proposed charter" before it is submitted to the voters, "in this State we have actually passed upon the validity of proposed constitutional or charter amendments, and have enjoined submission of an invalid charter amendment." 191 Md. at 322. The second case, Hillman v. Stockett, 183 Md. 641, 39 A.2d 803 (1944), is factually inapposite.